## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **HAMSTEIN CUMBERLAND MUSIC** ) | |
| **GROUP, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 06-CV-63-GKF-PJC** |
| ) | |
| **ESTATE OF JERRY LYNN** ) | |
| **WILLIAMS and LORELEI WILLIAMS,** ) | |
| ) | |
| **Defendants.** ) | |

### OPINION AND ORDER

This matter comes before the Court on Plaintiffs' pending motions related to discovery herein [Dkt. ## 182 & 186]. The motions are fully briefed and a hearing was held on June 19, 2008. Accordingly, the motions are now ripe for determination.

### *Background*

Jerry Lynn Williams ("Williams"), who died in November 2005, was a very successful songwriter. His compositions include "Running of Faith," recorded by Eric Clapton; "Givin' It Up for Your Love," Delbert McClinton's signature song; and, "Real Man," recorded by Bonnie Raitt.[1] This lawsuit stems from a dispute over foreign and

---

[1]     Williams wrote a number of songs for Clapton. "Forever Man," "See What Love Can Do," and "Something's Happening" appeared on Clapton's "Behind the Sun" album. "Pretending," "Forever Man," and "Running on Faith" were all hits from Clapton's "Journeyman" album. Williams' songs were also recorded by B.B. King and many others. *See* http://www.whereseric.com/ecfaq/songs/jerry-lynn-williams-forever-man-pretending-running-on-faith.html (accessed June 23, 2008).

In his autobiography, Clapton describes his relapse with drugs and alcohol after treatment at the Hazelden facility in Minnesota. Clapton met and befriended Williams in the mid-1980s, but notes that Williams "was hardly the best influence I could have had at the time." E. Clapton, "The Autobiography," at 218-19 (2007).

domestic music royalties on Williams' songs. The dispute between Williams and Plaintiffs ultimately resulted in an arbitration action commenced in December 2002.  In December 2004, an arbitration award of $500,000 was entered in favor of Plaintiffs and against Williams.  An Application to confirm that arbitration award was filed shortly thereafter and the award was reduced to Judgment on September 23, 2005, in the U.S. District Court for the Western District of Texas.  Between the time the arbitration award was announced (Dec. 2004) and it was reduced to Judgment (Sept. 2005), however, Williams and his wife, Lorelei Williams ("Lorelei"), divorced and divided their property.[2]  Jerry Lynn moved to St. Maarten in the Caribbean where he died on November 25, 2005.

This lawsuit focuses largely on transactions and events that occurred between December 2004 and Williams' death, but also concerns conduct occurring after Williams' death up to the present.  Plaintiffs allege that Williams and Lorelei acted to defraud creditors by putting Williams' assets outside their reach and making it impossible for Williams or his estate to satisfy the Judgment against him.  During the course of this litigation Plaintiffs have complained that Lorelei has not cooperated in discovery.  They allege that Lorelei has gone so far as to lie about the location of property, including bank accounts and safe deposit boxes that might shed light on the whereabouts of Williams' assets.

---

[2]     The Decree of Dissolution of Marriage was entered on May 31, 2005, in the District Court for  Tulsa County, Oklahoma.  The Decree also provided a division of marital property.

*Discussion*

The pending motions – Plaintiffs' Motion for Discovery Sanctions Against

Lorelei Williams ("Motion for Sanctions") [Dkt. # 182] and Plaintiffs' Motion for Show

Cause Hearing ("Motion to Show Cause") [Dkt. # 186] – concern five specific areas of

inquiry:

1) Property that Lorelei took from St. Maarten following Williams' death;
2) Documents regarding the Williams Family Wealth Preservation Trust;
3) Information concerning various financial accounts;
4) Lorelei's safe deposit box at Bank of America; and
5) Email and other electronically stored information.

The Motion for Sanctions asks the Court to grant default judgment against Lorelei and

sanction her $100,000 for her alleged misconduct during discovery.  The Motion to Show

Cause requests that Lorelei's former attorney, Guy Fortney, be brought before the Court

and made to answer as to what reasonable efforts he made to ensure that his former

client's discovery answers were full, true and correct.  Fortney attended the June 19,

2008, hearing, and responded to specific questions from the Court as to how certain

discovery matters were handled.

**I**
*Plaintiffs' Discovery Complaints*

The five discovery topics listed above will be addressed separately.

**A. Property taken from St. Maarten.**

In July 2007, Lorelei responded to discovery and stated that she had brought some

jewelry from St. Maarten following Williams' death.  She later supplemented her

responses to include photographs, two overcoats, and some "paperwork."  She said she

had purchased some personal items on these trips and shipped personal items home.  The

jewelry she identified consisted of two rings, and gold or brass chains, medallions and a cross.

Much has been made of Lorelei's failure to mention a "black pouch" among the property she took from St. Maarten after Williams' death.  This pouch apparently was a sort of "fanny pack" into which certain personal items were placed after Williams' death.  The pouch was then given to Lorelei who took it to California and then to Oklahoma.  The contents of the black pouch are in some dispute, although the only item possibly of significant value which has not been accounted for is a gold wrist watch.  Mario Biabiany ("Biabiany") of St. Maarten indicates the watch was in the pouch given to Lorelei.  Lorelei has testified that there was no gold watch in the pouch, that she does not have the gold wrist watch, and that she does not know where it is.  The parties agree that the black pouch, of itself, is of little or no value.  Its only significance appears to be that it serves to corroborate to some degree Biabiany's testimony versus Lorelei's as to property she removed from St. Maarten.

Fortney stated at the hearing that he knew of the pouch but did not include it among property removed from St. Maarten because of its *de minimis* value.  When the pouch became an issue and Fortney gained physical possession of it in February 2008, he notified opposing counsel immediately and produced the pouch and contents in March.

The gold wrist watch – and peripherally – the black pouch are the subject of the undersigned's May 22, 2008, Order.  *See* Order pp. 4-8 [Dkt. # 223].  I find Fortney's explanation regarding the black pouch reasonable.  One would logically believe that Plaintiff's interest in property taken from St. Maarten would focus on the jewelry in the black pouch and not necessarily the pouch itself.  Thus, failure to immediately disclose

the black pouch as property taken from St. Maarten is significance enough to warrant

sanctions.  The remaining disputes regarding property Lorelei allegedly took from St.

Maarten – for example, testimony regarding laptop computers and a black file case

containing music – boil down to a conflict between Lorelei and Biabiany.  The fact that

Biabiany's testimony does not square with that of the Defendant does not establish whose

testimony is correct and certainly does not provide a basis for discovery sanctions.  The

conflict in the witnesses' testimony will have to be resolved by the finder of fact at trial,

not by the Court on a discovery motion.

**B.  Documents regarding the Wealth Preservation Trust.**

Defendant was asked to produce the following[3]:

> Documents (and electronically stored information) relating to the creation
> of the Williams Family Wealth Preservation Trust, … the acquisition of
> assets into the Trust, the transfer of assets from the Trust, distributions
> from the Trust, or the beneficiaries of the Trust.

Request for Production No. 11, Exhibit 2 to Dkt. # 186.

After first opposing discovery in this area, Lorelei produced documents related to

the Lorelei Williams' Family Wealth Preservation Trust ("the Trust").[4] One of the

documents produced was an "Exhibit 'A'" that purported to show the property placed in

the Trust.  Plaintiffs complain that the version of Exhibit "A" produced by Lorelei differs

from documents produced by the Trust Company of Oklahoma ("TCO").  The Exhibit

produced by Lorelei lists five pieces of property placed in the Trust.  The Exhibits that

the Plaintiffs received from TCO list additional items that were placed in the Trust.

---

[3]     Lorelei is the Grantor of the Trust.  Trust Company of Oklahoma is Trustee.  *See*
Exhibit 10 to Motion to Show Cause, Dkt. # 186.

[4]     On November 16, 2007, the Court ordered Lorelei to produce documents related
to the Trust  for the period December 1, 2004, through December 1, 2006.  [Dkt. # 136].

Fortney stated that he received the Trust documents from the attorney who created the Trust and some from Lorelei.  There was no evidence proffered at the hearing that Lorelei or her attorneys hid or destroyed other versions of Exhibit A.

Fed. R. Civ. P. 34 permits a party to request that another party produce specified items "in the responding party's possession, custody, or control."  For purposes of Rule 34, documents are deemed to be in a party's possession, custody or control if that party has actual possession, custody or control "*or* has the legal right to obtain the documents on demand."  *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D.Colo. 1992).   Some courts have read the rule more expansively to include the "practical ability" to obtain the materials sought upon demand.  *E.g.*, *Prokosch v. Catalina Lightning, Inc.*, 193 F.R.D. 633, 636 (D.Minn. 2000).

Lorelei established the Trust in March 2006 with herself as Grantor and TCO as Trustee.  She reserved the rights to add and withdraw money or property to the Trust, to amend the Trust, and to revoke the Trust at any time.  Trust, Article II, ¶¶ A(1)-(4), Exhibit 10 to Dkt. # 186.  While the Trust documents do not specifically address her right to obtain papers from the Trustee, any reasonable reading of the Trust and the powers reserved to the Grantor make it clear that under either test, Lorelei had possession, custody and control of the Exhibits in TCO's actual possession.  By failing to secure these documents and produce them, Lorelei may be liable for sanctions, including costs incurred by Plaintiffs in issuing a subpoena to TCO.  Fed R. Civ. P. 37(b).

**C.  Documents regarding bank accounts.**

Plaintiffs complain of several discovery responses regarding financial accounts of certain entities:

**Interrogatory No. 10.**  Identify the number of all bank accounts and the type of said accounts held by you or any trust of which you are the beneficiary.

**Answer No. 10:**  One.  Bank of America in Tulsa, Oklahoma.  No trust accounts.

Plaintiff complain that Lorelei had several other bank accounts, lines of credit, safe deposit boxes, certificates of deposit and mortgages that she did not disclose.

Lorelei answers that the Interrogatory seeks only "bank accounts" and does not specify any time period covered by the request.  On the date the Interrogatory was served, Lorelei states that she had only the one bank account as identified.

Plaintiffs also served a Request for Production that is far broader than the Interrogatory:

> **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**
> Documents and (electronically stored information) relating to any and (sic) accounts at banks, financial institutions, or insurance companies (checking, savings, money market or of any other description or nature), investment accounts, trust accounts, or any other accounts, located anywhere in the world, for the location of funds from June 1, 2003 to the present in the names or for the benefit of:
>
> a. Jerry Lynn Williams
> b. Jerry Lynn Williams and/or Lorelei Williams
> c. Lorelei Williams
> d. Lorelei Markham
> e. Lorelei Wehba
> f. Platinum Parrot Corporation
> g. His Majesty Jerr Music
> h. Urge Music
> i. Great Cumberland
> j. Solomon King David
> k. Lorelei
> l. Chebon
> m. Chebon Williams
> n. Chebon Markham
> o. Chebon Wehba
> p. Urge International
> q. Peacemaker

     r.  Lorelei Foiles
     s.  Estate of Francis and Dorothy Foiles
     t.  Praise the Lord
     u.  Laura Williams
     v.  Laura W. Williams

Lorelei responded that she had no responsive documents as to entities (a), (b), and (d) through (t).  She objected and refused to produce documents related to Lorelei Williams (c), Laura Williams (u), and Laura W. Williams (v).

After Plaintiffs filed a Motion to Compel [Dkt. # 113], Lorelei responded that

> Plaintiffs have sought information on bank accounts for over 22 different individuals and entities.  Further, it (sic) seeks documents "relating to" any of the entities listed.  As such it is overly-broad and objectionable.  With regard to 14 of the entities, Mrs. Williams is not in possession of any responsive documents and has so stated.  With regard to documents for the following entities:  Lorelei Markham, Lorelei Wehba, Lorelei, Lorelei Foiles, Estate of Francis and Dorothy Foiles, Laura Williams, Laura W. Williams, should such accounts exist they would be beyond the bounds of discovery in this matter.  <u>Nonetheless, no such accounts exist to Mrs. Williams' knowledge.</u>

Defendant Lorelei Williams' Response to Plaintiffs' Motion to Compel, pp. 6-7 [Dkt. # 119] (emphasis added).

Through third party subpoenas Plaintiffs obtained documents indicating there were other financial accounts for which they contend documents should have been produced:

**Accounts at Citizens Security Bank.[5]**

**(1)  Checking Acct. # ***99, Greatman Productions LLC.**

Defendant states that this is not one of the entities listed in the Request for Production.[6]

---

[5]     For purposes of this discussion, the term "account" is ascribed the meaning given the term by Plaintiffs.  Plaintiffs' interpret the Request for Production as including typical bank accounts but also certificates of deposit, safe deposit boxes, and mortgage loans.

**(2)  Checking Acct. # ***18, Greatman Productions LLC d/b/a Great Cumberland.**

Defendant contends this account was closed in December 2006.

**(3)  Checking Acct. # ***941, Lorelei Wehba Williams.**

Defendant states this account was closed in May 2006.

**(4)  CD # *****592**
**(5)  CD # *****003**

Defendant contends these are not bank accounts.

**(6)  Savings Acct. # *****25, Lorelei Williams.**

Defendant contends this account was closed in June 2006.

**(7)  Line of Credit # ****80.**

Defendant contends this is not a bank account.

**(8), (9), (10)  Safe Deposit Boxes ## ***3, ***5, ***6.**

Defendant contends these are not bank accounts.

**Account at World Savings Bank**

**(11)  Mortgage loan # *****953.**

Defendant contends this is not an account.

**Accounts at Bank of America**

**(12)  Checking Acct. # *******59, Lorelei Williams d/b/a Urge Music.**

Defendant states this account was closed in May 2006.

**(13)  Checking Acct. # *******39, Laura Williams.**

Defendant contends this account was closed in June 2006.

---

[6]     It has been represented to the Court at prior hearings that Lorelei Williams is a member of Greatman Productions LLC.  Indeed, she has been designated the person with knowledge of this entity for purposes of a deposition pursuant to Fed. R. Civ. P. 30(b)(6).

**(14)  Safe Deposit Box # *****902.**

Defendant contends this is not an account.

**Accounts at IBC Bank**

**(15)  Loan # *******044**

Defendant contends this is not an account.

**Account at Bank of the West**

**(16)  Mortgage.**

Defendant contends this is not an account.

Lorelei has stated that she only disclosed one bank account in response to Interrogatory No. 10 because it only sought accounts existing as of the date the Interrogatory was served.  This argument does not work with respect to the Request for Production, however, since the Request specifies a time period from June 1, 2003 to the present.

The discovery requests do not define the term "account," but it is clear that the document request sought to capture documents relating to any account holding money and related to the designated entities.  The Rules of Civil Procedure required Lorelei to produce documents in her possession, custody or control related items 2, 3, 6, 11, and 12 enumerated above.[7]  These five items are accounts either in Lorelei's name or in the name of an entity – e.g., Greatman Productions LLC d/b/a/ Great Cumberland – that she had control over.  Thus, Lorelei had an obligation under the Rule to provide responsive documents.  Without deciding whether safe deposit boxes, mortgages, or certificates of

---

[7]     Lorelei may have had a duty to disclose information about loans, mortgages and certificates of deposit, but it is not clear to the Court (1) whether these are "accounts" for purposes of the request and (2) if they are accounts, whose name they are in.

deposit are "accounts" which would have fallen within the discovery net cast by the

Plaintiffs, it is clear that Lorelei improperly certified her responses to Request for

Production No. 2 in violation of Fed. R. Civ. P. 26(g).  An appropriate sanction would be

the Plaintiffs' cost in obtaining documents through third party subpoenas.

**D.      Failure to investigate the BOA Safe Deposit Box.**

In May 2007 Plaintiffs served Lorelei with Interrogatory No. 9 which requested

that she "Identify the contents of your Bank of America safe deposit box and inventory of

same."  She responded:

> The information sought in the interrogatory is overly broad, not relevant to
> this lawsuit, seeks information about assets that are not attachable by the
> Plaintiffs herein and sought solely for harassment of the Defendant.
> Without waiving said objection, Lorelei Williams has previously testified
> in her deposition about the contents of the safety deposit by (sic) at pp.
> 286-295, 374.

The reference was to Lorelei's deposition on February 27, 2007.  She was asked

"what types of things or what things do you keep in your safety deposit box?"  Dep. p.

291, 14-15.  She responded:  "Well, my will. . . . Things like that."  Dep. p. 291, lines 19

& 21.  She was asked if she kept money in the box, to which she answered:  "Yeah, I

could have – yes, I would keep money in my safety deposit box."  Dep. p. 291, lines 24-

25.  Lorelei stated "It's been so long since I looked in there [the safe deposit box] to see

what – if I did put any cash in there, and I'm not sure if there is still …."  Dep. p. 292,

lines 12-15.

Lorelei was asked what "other things" she would keep in the box.  She answered

that "I might keep titles or something like that, you know."  Dep. p. 293, lines 5-6.  She

was then asked about specific types of property, for example contracts, other legal

documents, jewelry, forearms, passport, letters.  Dep. p. 293, lines 10-12, 17, 20, 22, 24.

Lorelei generally answered that she did not recall or did not think such property was in the box. *Id.*, lines 13, 19, 21, 23 and 25. She also indicated she did not open the box often. Dep. p. 294, lines 3-11.

In December 2007, Fortney advised Plaintiffs that the BOA safe deposition box had not been opened since 1988, that the key to the box had been lost and that the box had now been drilled to open it. The box was empty. Plaintiffs complain that Lorelei failed to fulfill her duty to make reasonable inquiry to respond to the May 2007 interrogatory.

Interrogatories target not just the information known by the recipient, but also that information reasonably obtainable by him/her.

> A party has a duty to respond to interrogatories not only on the basis of her own knowledge but also with regard to the knowledge of other persons that reasonably can be obtained through investigation.

Jack H. Friedenthal, Mary Kay Kane and Arthur R. Miller, Civil Procedure § 7.9, p. 401 (West 1985).

A duty of reasonable inquiry is implicit in Fed. R. Civ. P. 33, but Fed. R. Civ. P. 26(g)'s certification requirement makes that duty explicit. Gene R. Shreve and Peter Raven-Hansen, Understanding Civil Procedure (3d ed. 2002). Rule 26(g) provides that all discovery responses must be signed by an attorney or party.

> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> (A) with respect to a disclosure, it is complete and correct as of the time it is made….

Rule 26 further provides:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The

sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

Here, Defendant signed a discovery response that objects to the interrogatory on multiple grounds and then, "without waiving said objection" adopts the Defendant's deposition testimony as her answer.[8]  The deposition testimony was given nearly five months prior to Defendant's interrogatory response.  The deposition testimony was incorrect as to what was in the safe deposit box, and speculative as well.  In the months between her deposition and her written discovery answers, Defendant apparently did nothing to educate herself about the contents of the safe deposit box.  When she answered Interrogatory No. 9 in July 2007, she had made no effort to determine the actual contents of the safe deposit box in order to provide an accurate answer.  Thus, her written answer was uninformed and inaccurate.  Defendant thereby breached her obligations under Rule 26 and is liable for sanctions for improper certification.  Fed. R. Civ. P. 26(g).

**E.       Failure to preserve email/electronically stored information.**

Plaintiffs contend that Lorelei may have filed to preserve email communications requested in discovery.  At the June 19 hearing, Fortney stated that he had opened Defendant's web-based email accounts and reviewed their contents.  He stated he checked protocols and did not see that any setting would delete email after a certain number of days or after a certain number of messages.  The Court finds no record

---

[8]       The Federal Rule directs that "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  The Rule envisions that respondent will *either* object *or* answer.  Here, Defendant did not stand on her objection and once she undertook to provide an answer she was obligated to do so fully and truthfully based on reasonable inquiry of the facts.

evidence to suggest that email or electronically stored information has been lost or destroyed.

## II
### *Appropriateness of Sanctions*

For the reasons described under the individual issues outlined above, sanctions are appropriate for the following discovery violations:  First, failure to provide all versions of Exhibit "A" to the Lorelei Williams Family Wealth Preservation Trust – documents within the control of Lorelei.  Second, failure to fully and accurately respond to Request for Production No. 2 regarding financial accounts for various entities.  Third, failure to make reasonable inquiry to determine the contents of the BOA safe deposit box.

## III
### *What Sanction is Appropriate?*

Fed. R. Civ. P. 37(a)(5) provides for payment of expenses where a party's motion to compel is granted.  Rule 37(b) lists available sanctions where a party has failed to comply with a court order to provide or permit discovery.  Rule 26(g)(3) also provides sanctions where a party improperly certifies discovery responses.

Under Rule 37, the decision whether to impose sanctions on a party for discovery violation and, if so, how severe a sanction to impose, is left to the district court's discretion.  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).  Because dismissal and default are the ultimate sanctions, they are appropriate only in cases of willful misconduct.  *Id.*  Courts have said that dismissal or default is disfavored "absent the most egregious circumstances."  *U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir. 2003).  Before default can be entered against a party, the court must consider:  (1) the degree of actual prejudice; (2) the amount of interference with the

14

judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that default would be a likely sanction for noncompliance; and (5) the efficacy of a lesser sanction. *Ehrenhaus*, 965 F.2d at 921 (citations and quotations omitted).

Weighing these various considerations, the Court determines that this case does not present such egregious circumstances as to warrant the entry of default judgment.

**(A) Actual Prejudice.**

It is difficult to ascertain the degree of actual prejudice resulting from Lorelei's conduct. The black pouch complained of and its contents have been accounted for. The parties agree that as to certain property – the gold wrist watch, laptops, black file case – there is conflicting testimony. The BOA safe deposit box has been determined to be empty. Arrangements have been made to examine the other boxes identified through third party discovery. Exhibit "A" showing various transfers of property into the Wealth Preservation Trust were obtained through a subpoena. The most problematic issue is the Defendant's failure to provide information on various bank accounts. The Court was advised at the June 19 hearing that additional subpoenas have been served on banks and financial institutions. The Court, *sua sponte*, directed that if additional testimony were needed from Lorelei Williams to develop this belated discovery, the Court would allow further deposition. Costs associated with such additional deposition would fairly be assessed against the Defendant.

**(B)  Interference with judicial process.**

There have been eight Scheduling Orders or discovery deadlines set in this case. [Dkt. ## 35, 69, 83, 91, 95, 114, 127, 170, 230]. There have also been six motions to extend discovery. [Dkt. ## 64, 74, 108, 122, 163, 224]. These are not all attributable to

Defendant.  In fact, only two such requests [Dkt. ## 64, 74] seem to a discovery dispute between Plaintiffs and Defendant Lorelei Williams.

**(C)  Culpability of litigant.**

Defendant failed to provide her attorney with all information needed to fully respond to discovery requests.  With respect to the problems outlined above, the culpability rests with Defendant, not her counsel.

**(D)  Whether Defendant was warned of possible default.**

The Court finds no record that Defendant was warned that failure to comply with a Court Order could result in default judgment being entered against her.

**(E) Efficacy of a lesser sanction.**

The Court has already imposed one monetary sanction on Defendant, and allowed a physical inspection of her home (after she failed to inventory property therein as ordered by the Court). At the June 19 hearing, the Court directed that Plaintiffs could re-depose Defendant on certain matters due to her discovery conduct.  The Court believes that such sanctions best meet the scope of violations brought to the Court's attention.

Plaintiffs have also asked for a monetary sanction of $100,000 "to compensate Hamstein for a portion of the legal fees that it has had to incur in discovery in this case…."  [Dkt. # 182, p. 25].  However, Plaintiffs have not offered any evidentiary support for this $100,000 figure.  Thus, while monetary sanctions may be appropriate as discussed above, there is no basis for the Court to determine what that amount should be and certainly no record evidence to support an award of $100,000.   Accordingly, the Motion for Discovery Sanctions [Dkt. # 182] must be **<u>DENIED</u>** as submitted.  Should Plaintiffs wish to seek monetary sanctions for the discovery violations discussed above,

the Court will consider them if properly supported by appropriate evidence establishing the costs incurred directly as a result of Defendant's misconduct.

Furthermore, the Court has determined that Fortney's answers to its questions at the June 19 hearing are sufficient to explain how certain discovery responses were prepared.  Accordingly, the Motion to Show Cause [Dkt. #186] is also **DENIED.**

IT IS SO ORDERED this 30th day of June 2008.

_____

Paul J. Cleary
United States Magistrate Judge