## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAMSTEIN CUMBERLAND MUSIC GROUP, HOWLIN' HITS MUSIC, INC., HAMSTEIN CUMBERLAND MUSIC COMPANY, BH ASSOCIATES, INC., D/B/A/ HAMSTEIN MUSIC COMPANY, AND BILL HAM, <br><br> Plaintiffs, <br><br> vs. <br><br> ESTATE OF JERRY LYNN WILLIAMS AND LORELEI WILLIAMS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) No. 06-CV-63-GKF-PJC ) ) ) ) ) ) |

## **OPINION AND ORDER**

Before the court is the second Motion for Preliminary Injunction of plaintiffs Hamstein Cumberland Music Group, Howlin' Hits Music, Inc., Hamstein Cumberland Music Company, BH Associates, Inc., d/b/a/ Hamstein Music Company, and Bill Ham (collectively "Hamstein") [Docket No. 217].

On January 30, 2006, Hamstein filed suit against defendants Estate of Jerry Lynn Williams ("Jerry") and Lorelei Williams ("Lorelei"), alleging claims of violation of the Uniform Fraudulent Transfers Act, OKLA. STAT. tit. 24, § 112 *et seq*. and common law fraud. Hamstein claims that the Decree of Divorce and subsequent transfer of property from Jerry to Lorelei was made to avoid execution of a $564,000.00 judgment against Jerry entered on September 23, 2005 by the U.S. District Court for the Western District of Texas.

On May 6, 2005, during the proceedings pending before the Texas federal court, Lorelei filed a Petition for divorce from Jerry in Tulsa County District Court. On May 24, 2005, Jerry appeared *pro se* and filed a waiver of service and time to plead, agreeing that the divorce could be tried and judgment rendered without further notice to him. On May 31, 2005, Lorelei obtained a Decree of

Dissolution of Marriage that divided the parties' property. Hamstein alleges that as a result of the property division, Jerry received one 2003 Hummer vehicle and items of household furniture and personal property then in his name and possession. Lorelei received the marital home in Bixby, Oklahoma, two other pieces of real estate in Tulsa, Oklahoma, a 1997 Bentley and three other 1990s model vehicles, one 1923 Ford Bucket-T, all other items of household furniture and furnishings, personal property in her possession, personal effects, clothing, jewelry, monies and bank accounts in her name, and Jerry's interest in approximately 96 songs listed on Schedule A to the Divorce Decree,[1] and his interest in 381 songs listed on Schedule B to the decree.

Hamstein filed its first Motion for Preliminary Injunction on February 17, 2006 [Docket No. 7]. This court conducted a hearing and later denied the motion by written Order dated July 20, 2006 [Docket No. 30]. Now, some twenty-seven months after filing the first motion, and six months prior to trial, Hamstein has moved a second time to enjoin Lorelei from encumbering or transferring any property which Hamstein believes was fraudulently transferred, and to enjoin any third-party payor of royalties from making any further payment of said sums until this matter is concluded.

A preliminary injunction may issue when the movant has shown that four conditions are met: (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998). A preliminary injunction is an extraordinary and drastic remedy, one that should not be

---

[1] It appears from the materials presently before the court that Jerry sold the royalty rights to these songs for a period of years to Stage Three, a London based company, "for an estimated 2-3 million dollars." If so, Lorelei's right to the royalties from these songs constitutes a future interest.

2

granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

Irreparable Harm

"It is . . . well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Schrier v. University Of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005), *quoting Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2948.1, at 152 (2d ed.1995). Extraordinary circumstances, such as a risk that the defendant will become insolvent before a judgment can be collected, may give rise to the irreparable harm necessary for a preliminary injunction. *Id.; Alvenus Shipping Co. v. Delta Petroleum,* 876 F.Supp. 482, 487-88 (S.D.N.Y. 1994)("an exception to the general rule exists when it is shown that a money judgment will go unsatisfied absent equitable relief").

Hamstein argues it "will be irreparably harmed, as nothing will restrict [Lorelei] from divesting herself of the assets . . ." This argument fails to directly address the issue before this court, as Hamstein must show that Loreli *will become insolvent* before a judgment can be collected, or that a money judgment *will go unsatisfied absent an injunction*. The argument that, absent an injunction, nothing will restrict the debtor from divesting herself of assets could apply in many, if not most, actions for money judgments.

Hamstein comes closer to the mark when it argues that "Lorelei Williams has further transferred some of the fraudulently transferred assets during the pendency of this action and, given the liquidity of the assets, is likely to do so again." Since the hearing on the first motion for preliminary injunction, Hamstein has learned through long and difficult discovery that, on October

3

28, 2005, Lorelei assigned her rights to Jerry's songs to an Oklahoma limited liability company called Pro Music, L.L.C. Another transfer occurred on March 6, 2006, when Lorelei created the Lorelei Williams Family Wealth Preservation Trust and transferred all her interest in Pro Music to the Trust. Lorelei transferred three parcels of real property and three of the vehicles to the Trust on the same date. Hamstein also claims that, from October 14, 2005 to December, 2007, Lorelei has transferred more than $468,800.00 out of bank accounts she opened and controlled. Hamstein speculates that Lorelei "may be using at least one and perhaps more than one safe deposit boxes as repositories for cash and that cash . . . may have originated with or related to some of the song or banking assets fraudulently transferred to Lorelei Williams in the Decree of Divorce."

Having considered the briefs and exhibits filed by the parties, the court concludes that Hamstein has not met its burden with respect to the element of irreparable harm. Despite evidence of transfers into the Trust, Hamstein has not shown that Lorelei will become insolvent before a judgment can be collected or that a money judgment will go unsatisfied absent an injunction. Hamstein also fails to show irreparable harm will occur in the event it obtains a judgment and has to "chase the assets" through a series of post-divorce transactions. Although the process could consume both time and resources, "[t]he key word in this consideration [of irreparable harm] is *irreparable.* Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974), *quoting Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. App. 1958). The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Virginia Petroleum Jobbers,* 259 F.2d at 925.

Likelihood of Success on the Merits

Upon review of the briefs and evidentiary materials submitted, this Court cannot conclude that Hamstein has met its burden of showing a substantial likelihood of success on the merits, as questions of material fact remain for the jury. Such issues include, but are not necessarily limited to, whether the divorce was a ruse to avoid execution on the Hamstein judgment.

Balancing of Harms

As Judge Kern wrote in his order denying Hamstein's first motion for preliminary injunction, in the balancing analysis, the court may not consider harm that could eventually be compensated by money damages. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004). This includes the costs associated with chasing assets. In that light, the court concludes that Hamstein has not met its burden as to this element.

Public Interest

Injunctive relief in a case such as this would not be contrary to the public interest in the event the movant were to meet its burden with regard to the likelihood of success on the merits. As set forth above, the court cannot conclude at this juncture that Hamstein has met its burden thereon. Moreover, it would not be in the public interest to impose a preliminary injunction on the transfer or encumbrance of assets properly awarded to a spouse in a decree free of fraud. The issues, including the issue of fraudulent intent, will be place before a jury to be empaneled in a few, short months.

WHEREFORE, for the reasons set forth above, plaintiffs' Motion for Preliminary Injunction (Docket No. 217) is denied.

IT IS SO ORDERED this 30th day of June 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma